FILED
17 AUG -1 AM 8:40
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: AJS  DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JESUS ARMANDO PORTOCARRERO-ANGULO,<br><br>Defendant. | Case No.: 3:16-cr-02555-BEN-01<br><br>**ORDER DENYING MOTION TO DISMISS INFORMATION AND SUPPRESS STATEMENTS** |

Defendant Jesus Portocarrero-Angulo has filed a motion to dismiss the information for lack of jurisdiction, to dismiss the information due to destruction of evidence, and to suppress statements. (ECF No. 55). The United States opposed the motion. (ECF No. 60). The Court heard oral arguments on June 12, 2017. Thereafter, Defendant filed a supplemental brief in support of his motion. (ECF No. 66). The Court has considered the papers, the parties' arguments, and the governing law, and for the following reasons, **DENIES** Defendant's motion.

///
///
///
///

1

## BACKGROUND

On or about October 4, 2016, approximately 140 to 180 nautical miles northeast of the Galapagos Islands of Ecuador, a military patrol aircraft ("MPA") observed a suspected go-fast vessel ("GFV")[1] jettisoning packages of suspected contraband overboard. The MPA marked the jettison area and continued to monitor the GFV. The United States Coast Guard Cutter ("USCGC") Waesche arrived at the marked jettison field and its officers recovered 21 bales of suspected contraband. The officers field tested one bale twice. The bale tested positive for cocaine. The USCG officers also recovered one satellite buoy and one handmade stick buoy with a Spot Trace GPS beacon.

The USCGC Waesche launched a helicopter to locate the GFV. Upon locating the GFV, the helicopter employed three warning shots, but the GFV failed to stop. The helicopter then delivered two precision disabling shots to the GFV's engine, which caused the vessel to stop.

The USCGC Waesche launched a small boat team to contact the GFV. The GFV had the name "PEZ SIERRA" written on its port and starboard sides. The master of the vessel, Portocarrero, claimed the vessel to be of Ecuadorian nationality. The USCG contacted Ecuadorian authorities to confirm the vessel's nationality, but the authorities reported that they could neither confirm nor deny the claimed Ecuadorian registry of the vessel. A full law enforcement boarding was then conducted.

During the boarding, USCG officers identified all three Ecuadorian nationals onboard, Defendants Portocarrero, Bautista, and Arroyo. The officers also found a high flier buoy with a Spot Trace GPS beacon of a similar type and construction as that recovered with the 21 bales of suspected cocaine.

---

[1] Go-fast vessels are boats that travel at high rates of speed and are preferred vehicles for drug and alien smuggling operations. *United States v. Perlaza*, 439 F.3d 1149, 1153 n.2 (9th Cir. 2006).

2

1  The USCG officers took Defendants into custody and seized the cocaine.
2  Defendants arrived in San Diego, California on Friday, October 21, 2016 and made an
3  initial appearance in Court on Monday, October 24, 2016. Defendants are charged under
4  the Maritime Drug Law Enforcement Act ("MDLEA" or the "Act"), 46 U.S.C. § 70503
5  *et seq.* On March 2, 2017, the Government filed a superseding information charging Mr.
6  Portocarrero with possession of cocaine with intent to distribute, in violation of 46 U.S.C.
7  § 70503.

## DISCUSSION

### I. Motion to Dismiss for Lack of Jurisdiction

Defendant presents two arguments to dismiss the information for lack of jurisdiction. Defendant first argues that the MDLEA is unconstitutional as applied to him because he was arrested in waters subject to Ecuador's jurisdiction, and not on the "high seas" as required by the MDLEA. Second, Defendant argues that the Court must dismiss the indictment for lack of constitutional jurisdiction under the MDLEA. The Court addresses each argument in turn.

### A. The MDLEA Is Constitutional As Applied to Defendant and the United States Has Jurisdiction Over the Waters Where the GFV Was Intercepted

Congress enacted the MDLEA under Article I of the Constitution's Piracies and Felonies Clause, which grants Congress the power to "define and punish piracies and felonies committed on the high seas, and offenses against the law of nations." U.S. Const., art. I, § 8, cl. 10. The Act applies to conduct on the "high seas." *United States v. Perlaza*, 439 F.3d 1149, 1159 (9th Cir. 2006) (citing *United States v. Aikins*, 946 F.2d 608, 613 (9th Cir. 1991)). However, the MDLEA does not define what constitutes the "high seas."

Defendant argues that he was not captured on the high seas, but within waters subject to Ecuador's jurisdiction. He relies on the definition of "high seas" from the United Nations Convention on the Law of the Sea ("UNCLOS") and statements Ecuador

made when it acceded to UNCLOS in 2012. *See* United Nations Treaty Collection, Status of Treaties, UNCLOS, *available at* https://treaties.un.org/Pages/ViewDetailsIII.aspx?src=TREATY&mtdsg_no=XXI-6&chapter=21&Temp=mtdsg3&clang=_en (last visited July 21, 2017). The United States has not ratified UNCLOS but recognizes that it reflects customary international law. *See United States v. Alaska*, 503 U.S. 569, 588 n.10 (1992). The Ninth Circuit has not considered the effect of UNCLOS on MDLEA jurisdiction.

UNCLOS defines certain sea areas and the rights of use in those areas. Those areas include the territorial sea, the exclusive economic zone, and the high seas. The territorial sea extends 12 nautical miles from land. UNCLOS, art. 3. A coastal state has sovereignty over its territorial sea. *Id.*, art. 2. The exclusive economic zone ("EEZ") extends 200 nautical miles from land, or 188 nautical miles seaward from the territorial waters. *Id.*, art. 57. UNCLOS limits a coastal state's rights in the EEZ. *See Id.*, art. 56. Specifically, UNCLOS states that a coastal state has "sovereign rights for the purpose of exploring and exploiting, conserving and managing the natural resources . . . and with regard to other activities for the economic exploitation and exploration of the zone." *Id.*, art. 56. The section of UNCLOS concerning the high seas applies to "all parts of the sea that are not included in the exclusive economic zone, in the territorial sea or in the internal waters of a State." *Id.*, art. 86. In other words, the high seas begin after 200 nautical miles. "The high seas are open to all States." *Id.*, art. 87.

When Ecuador acceded to UNCLOS, it declared that the "Ecuadorian State . . . exercises sovereignty and jurisdiction over the 200 nautical miles that comprise the . . . territorial sea, . . . [and] [t]he exclusive economic zone." *See* United Nations Treaty Collection, Status of Treaties, UNCLOS, *available at* https://treaties.un.org/Pages/View DetailsIII.aspx?src=TREATY&mtdsg_no=XXI-6&chapter=21&Temp=mtdsg3& clang=_en (last visited July 21, 2017). It reserved for itself certain rights and obligations in particular sea areas. *See id.* Several countries objected to Ecuador's declaration, including Belgium, Finland, Germany, Ireland, Italy, the Netherlands, and Sweden, on

4

the grounds that the declaration purported to modify the legal effects of the provisions of UNCLOS as applied to Ecuador. *See id.*

Defendant argues that because he was captured within Ecuador's EEZ, he was not captured on the high seas, and his prosecution is unconstitutional. He further argues that because he was captured in an area that Ecuador has reserved for its jurisdiction, the Act is unconstitutional as applied to him.

Both of Defendant's arguments are unavailing. It is well-established that the high seas lie seaward of a nation's territorial waters. *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659, 1667 (2013) ("Piracy typically occurs on the high seas, beyond the territorial jurisdiction of the United States or any other country."); *United States v. Louisiana*, 394 U.S. 11, 23 (1969) ("Outside the territorial sea are the high seas, which are international waters not subject to the dominion of any single nation."); *United States v. Davis*, 905 F.2d 245, 248 (9th Cir. 1990) (affirming conviction under the MDLEA) ("The high seas lie seaward of the territorial sea."). The United States has historically understood the territorial sea to extend three nautical miles from the coastal baseline, *United States v. Rubies*, 612 F.2d 397, 402 n.2 (9th Cir. 1979) ("[T]he territorial sea extends three miles seaward. . . . The high seas lie seaward of the territorial sea. . . . [N]o state may subject the high seas to its exclusive sovereignty."), but with the advent of UNCLOS, the United States now recognizes a territorial sea of 12 nautical miles. *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 441 n.8 (1989) (recognizing shift from three nautical miles to 12 nautical miles); Presidential Proclamation No. 5928, 54 Fed. Reg. 777 (Dec. 27, 1988) (extending U.S. territorial waters to 12 nautical miles in reliance on UNCLOS); Office of Ocean Affairs, U.S. Dep't of State, Pub. No. 112, *Limits in the Seas: United States Responses to Excessive Maritime Claims* 7, 33 (1992) (explaining that territorial sea claims greater than 12 nautical miles are excessive maritime claims that are illegal in international law). Therefore, under long-standing jurisprudence, the high seas begin after the territorial sea of 12 nautical miles.

Admittedly, UNCLOS defines high seas as starting after 200 nautical miles. But this Court is not persuaded that it should adopt such a definition. First, almost all of the high seas provisions in Part VII of UNCLOS apply equally to the EEZ. UNCLOS, art. 58 (stating that the rights and duties outlined in the "high seas" section, articles 87-115, apply within the EEZ); *United States v. Beyle*, 782 F.3d 159, 167 (4th Cir. 2015); Restatement (Third) of Foreign Relations § 514 (1987) ("the rights and freedoms of other states in the zone . . . are the same as on the high seas"). In particular, article 108, which is found in the high seas section and is entitled "illicit traffic in narcotic drugs or psychotropic substances," applies to the EEZ. *See* UNCLOS, art. 58(2). Article 108 provides that "[a]ny State which has reasonable grounds for believing that a ship flying its flag is engaged in illicit traffic in narcotic drugs or psychotropic substances may request the cooperation of other States to suppress such traffic." UNCLOS, art. 108. Thus, any state may investigate suspected drug trafficking offenses in a coastal state's EEZ without impugning the coastal state's sovereignty.

The broad grant of rights to other states in the EEZ is consistent with the limited rights that UNCLOS grants to the coastal state in the zone. A coastal state like Ecuador does not have full sovereignty over its EEZ. UNCLOS, arts. 2-3, 56. Rather, UNCLOS limits a coastal state's rights in the EEZ to economic exploration and exploitation and grants it jurisdiction to conduct marine scientific research and protect and preserve the marine environment. UNCLOS, art. 56; *United States v. Carvajal*, 924 F. Supp. 2d 219, 234 (D.D.C. 2013) ("States enjoy specific rights, rather than sovereignty, with respect to the continental shelf and exclusive economic zone." (citing *Territorial & Maritime Dispute (Nicaragua v. Colombia)*, 2012 I.C.J. No 124)); Restatement (Third) of Foreign Relations Law § 514 ("The coastal state does not have sovereignty over the exclusive economic zone but only 'sovereign rights' for a specific purpose—the management of natural resources and other economic activities."). But this "allocation of economic rights, however, is a far cry from conferring on a nation the exclusive authority endemic to sovereignty to define and punish criminal violations." *Beyle*, 782 F.3d at 167.

Defendant points to no court that has defined the high seas as starting after 200 nautical miles. In fact, several courts have ruled to the contrary. Those courts have held that the high seas includes the exclusive economic zone between 12 and 200 nautical miles. *See Beyle*, 782 F.3d at 166-169 (holding that defendant captured 30-40 nautical miles off Somali coast was captured on the high seas); *United States v. Matos-Luchi*, 627 F.3d 1, 2 n.1 (1st Cir. 2010) (concluding that vessel was interdicted on the high seas, despite the fact that it was seized within the Dominican Republic's EEZ); *United States v. Suarez*, No. 16-cr-453, 2017 WL 2417016, at *6-7 (S.D.N.Y. June 1, 2017) (denying motion to dismiss indictment on the ground that the MDLEA was unconstitutional as applied to defendants because they were arrested in a coastal state's EEZ); *United States v. Montano Preciado*, No. 14-cr-874, 2016 WL 4184304, at *2 (S.D.N.Y. Aug. 4, 2016) (same); *United States v. Carvajal*, 924 F. Supp. 2d 219, 234 n.7 (D.D.C. 2013) (declining to adopt UNCLOS's definition of "high seas" and instead defining "high seas" as the waters beyond 12 nautical miles from the coast, explaining that such a definition "is the better reasoned understanding that has long been in use"); *see also Dilbert v. United States*, No. 8:13-cv-2189, 2013 WL 5408444, at *3 (M.D. Fla. Sept. 25, 2013) (dismissing § 2255 motion to vacate and finding argument that the EEZ should be considered part of the territorial sea "misinterprets UNCLOS, which defines EEZ as 'an area beyond and adjacent to the territorial sea'"); *United States v. Salad*, 908 F. Supp. 2d 730, 734-35 (E.D. Va. 2012) (rejecting argument that Somalia is entitled to 200-mile territorial sea because "the twelve-mile limit accurately describes customary international law"); *Westerngeco LLC v. Ion Geophysical Corp.*, 776 F. Supp. 2d 342, 368 (S.D. Tex. 2011) (considering U.S. patent law jurisdiction) ("Customary international law and UNCLOS reaffirm the principle that a country's EEZ retains its character as outside the territory of that country and largely maintains its status as high seas."). This Court agrees with those reasoned decisions.

Ecuador's claim of sovereignty and jurisdiction extending to 200 nautical miles does not alter the Court's decision. To start, it is not clear that Ecuador's declaration

7

seeks to modify the limits of UNCLOS in any meaningful way relevant here. While the declaration states that Ecuador "exercises sovereignty and jurisdiction over the 200 nautical miles" comprising the territorial sea and EEZ, the declaration acknowledges that the territorial sea extends 12 nautical miles and that Ecuador has certain limited rights in the EEZ. Even if the Court construes the declaration as an assertion of sovereignty to a 200 nautical mile territorial sea, the United States does not recognize such a claim. *See* Office of the Judge Advocate Gen., U.S. Navy, *Maritime Claims Reference Manual: Ecuador* (Apr. 2017), *available at* http://www.jag.navy.mil/organization/code_10 _mcrm.htm (last visited July 24, 2017). Furthermore, when Ecuador acceded to UNCLOS in 2012, it made a "clear international commitment to a territorial sea of no more than twelve nautical miles." *Beyle*, 782 F.3d at 168. And, as noted by the many countries that objected to Ecuador's declaration, UNCLOS prohibits signatories from selectively opting out of its provisions. UNCLOS, arts. 309-10. Ecuador's territorial sea extends to 12 nautical miles and the high seas begin seaward of that boundary.

Finally, Defendant's reliance on *United States v. Bellaizac-Hurtado*, 700 F.3d 1245 (11th Cir. 2012), is unhelpful. *Bellaizac-Hurtado* does not apply to Defendant's case. There, the Eleventh Circuit ruled that the MDLEA was unconstitutional as applied to the drug-trafficking activities of the defendants in that case, which occurred in the territorial waters of Panama. The Eleventh Circuit looked exclusively at Congress's power to "define and punish . . . offenses against the law of nations," which was the grant of power on which the United States based its prosecution, and found that drug trafficking is not an offense against the law of nations. *Id.* at 1247, 1258. The court explicitly stated that it has "always upheld" criminal prosecutions of drug trafficking laws as a constitutional exercise of power under the Felonies on the High Seas Clause. *Id.* at 1257. Therefore, *Bellaizac-Hurtado* is clearly inapposite as Defendant was not intercepted in Ecuador's territorial waters, but on the high seas, and this MDLEA prosecution is invoked under the government's authority to "define and punish . . . felonies committed on the high seas." U.S. Const., art. I, § 8, cl. 10.

In conclusion, the MDLEA is constitutional as applied to Defendant because he was captured on the high seas. Courts have repeatedly recognized that the high seas begin after the 12 nautical mile territorial sea, not after a country's EEZ.

### B. Defendant's Motion to Dismiss for Lack of Constitutional Jurisdiction Is Premature

The MDLEA makes it unlawful to "knowingly or intentionally manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance on board . . . a vessel subject to the jurisdiction of the United States." 46 U.S.C. § 70503(a)(1). This provision applies "even though the act is committed outside the territorial jurisdiction of the United States." § 70503(b). If the MDLEA is applied extraterritorially, then both statutory and constitutional jurisdiction must be satisfied. *United States v. Perlaza*, 439 F.3d 1149, 11160 (9th Cir. 2006). Defendant moves to dismiss, arguing that the United States lacks constitutional jurisdiction over him. The Government responds that the motion should be denied as premature.

Under the MDLEA, a vessel "subject to the jurisdiction of the United States" includes a "vessel without nationality," also referred to as a stateless vessel. 46 U.S.C. § 70502(c)(1). Relevant here, a "vessel without nationality" includes "a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." *Id.* § 70502(d). If this requirement is met, statutory jurisdiction exists. A contested question of statelessness is a factual question that must be submitted to a jury. *Id.* at 1165.

As to constitutional jurisdiction, "due process requires the Government to demonstrate that there exists 'a sufficient nexus between the conduct condemned and the United States' such that the application of the statute would not be arbitrary or fundamentally unfair to the defendant." *Perlaza*, 439 F.3d at 1160 (quoting *United States v. Medjuck*, 156 F.3d 916, 918 (9th Cir. 1998)). However, there is one exception to the constitutional jurisdiction requirement where "[i]f a vessel is deemed stateless, there is no

requirement that the Government demonstrate a nexus between those on board and the United States before exercising jurisdiction over them." *Id.* at 1161 (quoting *United States v. Moreno-Morillo*, 334 F.3d 819, 829 (9th Cir. 2003)). Therefore, once a vessel is found to be "stateless," the court's jurisdictional inquiry is complete. *Id.* at 1167. However, if a vessel is determined to be registered in a foreign nation, the court must determine whether there is a sufficient nexus between the vessel and the United States. *Id.*

Here, the Government asserts statutory jurisdiction based on the PEZ SIERRA being stateless because Ecuadorian authorities did not "affirmatively and unequivocally assert that the vessel is" Ecuadorian. Defendant contests the vessel's statelessness, but contends that even if the PEZ SIERRA was stateless, the Court must dismiss for lack of constitutional jurisdiction. Defendant misreads *Perlaza* and asks the Court to put the cart before the horse. The disputed issue of whether the vessel is stateless is a question of fact for the jury that must be determined before the question of constitutional jurisdiction is addressed. If the jury finds the vessel to be stateless, the exception to the constitutional jurisdiction requirement applies and the Court need not determine whether a sufficient nexus exists between the vessel and the United States. Therefore, Defendant's motion to dismiss for lack of constitutional jurisdiction is premature.

Based on the reasoning set forth above, the Court **DENIES** Defendant's motion to dismiss the information.

## II. Motion to Dismiss Due To Destruction of Evidence

Defendant moves to dismiss the information due to the Government's destruction of evidence. It is not clear what evidence Defendant believes the Government has destroyed but, at a minimum, he contends that the vessel, evidence on board the vessel, and "RVSS footage" was destroyed. Defendant argues that the Court should hold an evidentiary hearing to determine what sanctions to impose on the Government.

Criminal motions requiring a predicate factual finding must be supported by a declaration. S.D. Cal. Crim. R. 47.1(g). The Court need not grant an evidentiary hearing

where a party fails to properly support his motion. *Id.* In this case, Defendant has not laid an evidentiary foundation in support of his motion in the form of a declaration. For instance, Defendant's motion claims that the Government destroyed "RVSS footage." To rule on Defendant's request to dismiss the information or otherwise suppress evidence, the Court would need to make a predicate factual finding as to the existence and destruction of the alleged "RVSS footage." But Defendant has not provided a declaration. Moreover, the United States asserts that it is unaware of "RVSS footage" that Defendant claims was destroyed. Holding a hearing on evidence that does not exist would waste the Court's and the parties' resources. Because Defendant has failed to meet the requirements of Rule 47.1, there are no contested issues of fact, properly joined, that necessitate holding an evidentiary hearing to resolve the motion. Defendant's request for a hearing is denied. *United States v. Herrera-Rivera*, 832 F.3d 1166, 1173 (9th Cir. 2016) (holding that district court did not abuse its discretion in denying request for evidentiary hearing on motion to suppress where defendant failed to support his motion with a declaration).

On the merits, Defendant has not established that dismissal is warranted. To obtain dismissal of an information based on the government's destruction of evidence, a defendant must establish the following: (1) the destroyed evidence possesses exculpatory value that is apparent before the evidence is destroyed, (2) the destroyed evidence is of such a nature that the defendant is unable to obtain comparable evidence by other reasonably available means, and (3) the government acted in bad faith in failing to preserve the potentially useful evidence. *See Arizona v. Youngblood*, 488 U.S. 51, 58 (1988); *California v. Trombetta*, 467 U.S. 479, 489 (1984); *United States v. Zaragoza-Moreira*, 780 F.3d 971, 977 (9th Cir. 2015). The bad faith requirement dovetails with the requirement that the exculpatory value of the evidence be apparent before its destruction. *Zaragoza-Moreira*, 780 F.3d at 977. "The presence or absence of bad faith turns on the government's knowledge of the apparent exculpatory value of the evidence at the time it

was lost or destroyed, because without knowledge of the potential usefulness of the evidence, the evidence could not have been destroyed in bad faith." *Id.* at 977.

Despite neither party presenting declarations attesting to the facts at issue, both sides agree that the PEZ SIERRA was destroyed at sea. However, Defendant has not explained how the destroyed vessel or its contents possessed exculpatory value that was apparent at the time they were destroyed. Nor has he explained how the Government has failed to provide an adequate replacement for the destroyed evidence. The Government asserts that the USCG searched for and photographed all documents and equipment onboard the PEZ SIERRA and photographed the vessel from all angles. The United States has also produced video footage recorded by the aircraft involved. Finally, Defendant has not demonstrated that the Government acted in bad faith in destroying the vessel. Defendant has made no showing that the USCG officers recognized some as-yet-unidentified potentially useful or exculpatory value of the destroyed evidence and intentionally chose to destroy it in bad faith. Rather, the Government contends that the vessel was sunk because it was a hazard to navigation. *See Perlaza*, 439 F.3d at 1156 (explaining that the GFV was destroyed as a hazard to navigation because it was "too big, too heavy, . . . did not have any hoisting points . . . to lift it out of the water," and was surrounded by fuel that could be ignited).

Because Defendant has not satisfied his burden, the motion is **DENIED**.

### III. Motion to Suppress Statements

Defendant moves to suppress his statements because they were obtained beyond the six-hour safe harbor of 18 U.S.C. § 3501(c). Defendant contends that a 20-day delay between his capture off the coast of Ecuador and presentment to a magistrate judge in this Court render his statements inadmissible.

Under Federal Rule of Criminal Procedure 5(a), an arresting officer "must take the defendant without unnecessary delay before a magistrate judge." Fed. R. Crim. P. 5(a)(1)(B). This rule is known as the presentment requirement. The remedy for delay in presentment is suppression of evidence obtained during the unreasonable delay. *Corley*

*v. United States*, 556 U.S. 303, 309 (2009). Congress enacted 18 U.S.C. § 3501(c) to provide guidance on the presentment requirement. Section 3501(c) provides:

> [A] confession made . . . by a . . . defendant, while such person was under arrest or other detention in the custody of any law-enforcement officer . . . , shall not be inadmissible solely because of delay in bringing such person before a magistrate judge . . . if such confession is found by the trial judge to have been made voluntarily . . . and if such confession was made . . . within six hours immediately following his arrest or other detention: *Provided*, That the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate judge . . . beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate judge.

Under this rule, "[w]hen a criminal defendant brings a suppression motion based on [delay in presentment], the district court looks to see whether the confession was obtained within six hours of arrest. If so, [the statute] does not bar its admission. . . . If, however, the 'confession occurred before presentment and beyond six hours, . . . the court must decide whether delaying that long was unreasonable or unnecessary . . . and if it was, the confession is to be suppressed.'" *United States v. Gowadia*, 760 F.3d 989, 993 (9th Cir. 2014) (citing *Corley*, 556 U.S. at 322). "[D]elay for the purpose of interrogation is the epitome of 'unnecessary delay.'" *Corley*, 556 U.S. at 308.

In this case, it is undisputed that Defendant was interrogated more than six hours after his arrest and before his presentment. Therefore, the Court must determine whether the delay in presentment is "reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate judge." § 3501(c). The Court concludes that the delay was reasonable.

The following facts appear to be undisputed: Coast Guard personnel detained Defendant 140 to 180 nautical miles off the coast of Ecuador on October 4, 2016. He arrived in Guatemala City, Guatemala on Friday, October 21, 2016 and flew to San Diego, California that afternoon. Defendant was transported to the Customs and Border Protection Office for overnight housing and the Honorable Mitchell D. Dembin signed a

complaint against Defendant that day. (ECF No. 1). That same evening, Defendant received *Miranda* warnings and was interviewed. He was then arraigned on the complaint before the Honorable Jan M. Adler on Monday, October 24, 2016, the first court day following his arrival in the United States.

Given the need to transport Defendant from a remote location on international water thousands of nautical miles away from the United States, coordinate his transfer among government authorities, and accommodate other logistical hurdles and environmental conditions, a 20-day delay between Defendant's detention and presentation is reasonable. Other courts considering maritime interdiction cases in this District agree. Those courts have found delays up to 21 days not unreasonable. *See United States v. Torres-Iturre*, No. 15-cr-2586-GPC, ECF No. 92 (May 12, 2016) (21-day presentment delay did not constitute unnecessary delay where defendants were arrested over 2,000 nautical miles from San Diego); *United States v. Gonzalez-Corredor*, No. 12-cr-2550-DMS, ECF Nos. 54, 67 (Dec. 13, 2012) (19-day presentment delay not unreasonable in light of the "monumental undertaking" required to "effect the safe yet efficient transportation of [the defendants] from where they were apprehended [in international waters off the coast of Panama] to the United States"); *United States v. Cedeno-Cedeno*, No. 14-cr-3305-L (June 3, 2016) (16-day presentment delay did not violate Rule 5 "[i]n light of the 'international gymnastics' required to coordinate transportation for defendants apprehended off the coast of Panama in international waters over 1,200 miles from the United States by a joint Coast Guard and U.S. Navy operation").

Defendant mounts one last argument: that there is "no reason why" he could not have been presented to a magistrate judge on Friday, October 21, 2016, the day of his arrival in San Diego. However, General Order No. 605 of this Court requires the Department of Justice, through the Bureau of Prisons and the U.S. Marshal Service, to insure that every detainee being brought before the Court has been screened for and determined not to have transmittable tuberculosis. "Such screening shall be completed

expeditiously and to avoid unnecessary delay in the detainee's appearance before the Court as required by Federal Rule of Criminal Procedure 5." *See* S.D. Cal., Gen Order No. 605. The need to complete this screening makes the delay between Defendant's arrival in San Diego on Friday afternoon and his presentment the next Monday reasonable.

Defendant's motion to suppress is **DENIED.**

## CONCLUSION

For the above reasons, Defendant's motion to dismiss the information and suppress statements is **DENIED.**

**IT IS SO ORDERED.**

Dated: July 28, 2017

Hon. Roger T. Benitez
United States District Judge

15